J-S04002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| W. & N. L | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.S. | : | |
| | : | |
| Appellant | : | No. 1423 MDA 2020 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.L. | : | |

Appeal from the Order Entered November 2, 2020
In the Court of Common Pleas of York County Civil Division at No(s):
2020-FC-1168-03

BEFORE:  OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 23, 2021**

Appellant, L.S. (Mother), appeals from the order filed on November 2, 2020, transferring jurisdiction over a child custody matter[1] from South Carolina to Pennsylvania and transferring custodial rights originally granted to B.L. (Father) to W.L. and N.L., the paternal grandparents (Grandparents). Because we hold that the trial court lacked subject matter jurisdiction in this case, we vacate the November 2, 2020 order and remand with instructions.

We briefly summarize the facts and procedural history of this case as follows.  Mother and Father were married and lived in South Carolina with

---

[1]   The children about whom this custody centers are H.L. (a male born in January, 2015) and L.L. (a female born in April, 2016).

their two children until they separated in 2018. On January 13, 2020, a South Carolina court approved a custody agreement between Mother and Father. Under the terms of the agreement, Mother and Father shared legal custody and Mother obtained primary physical custody and received permission to relocate with the children to Stewartstown, Pennsylvania. The custody agreement gave Father, who at all relevant times was and remains enlisted in the United States armed forces, specific rights of visitation and communication access with the children. Father, a legal resident of Texas, sold the family home in South Carolina. He moved into an apartment in South Carolina, where he currently lives until he completes active duty. Mother and the children continue to live in Pennsylvania.

On June 29, 2020, in the Court of Common Pleas of York County, Pennsylvania, Grandparents filed a complaint for custody of the children pursuant to 23 Pa.C.S.A. §5325(2). On July 13, 2020, Mother filed preliminary objections to the complaint, arguing that the trial court lacked jurisdiction and that Grandparents lacked standing. Mother filed a brief in support of her objections on July 27, 2020, arguing that the South Carolina court was the appropriate jurisdiction to litigate claims involving the children's custody. On July 31, 2020, Grandparents filed a brief in opposition to Mother's preliminary objections. The trial court held a hearing on August 4, 2020. By order entered on August 5, 2020, the trial court determined that Grandparents had standing to file a complaint for custody in Pennsylvania, that the Court of Common

Pleas of York County had jurisdiction to entertain Grandparents' custody action, and that Pennsylvania was the more convenient forum.

On August 11, 2020, Mother filed a motion for reconsideration of her preliminary objections to Grandparents' complaint for custody. The trial court granted reconsideration and held a second custody hearing. By order entered on November 2, 2020, the trial court again overruled Mother's objections to the trial court's jurisdiction and Grandparents' standing. The trial court determined that, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S.A. § 5401, *et seq.*, Pennsylvania had jurisdiction to hear Grandparents' complaint for custody of the children and that Grandparents had standing to litigate their claim. The trial court also ordered a temporary transfer of Father's custodial rights to Grandparents pursuant to 51 Pa.C.S.A. § 4109 (child custody proceedings during military deployment) "for as long as Father wishes to allow that assignment." Order, 11/2/2020, at 3. This timely appeal resulted.[2]

---

[2] The trial court order further directed that the parties could file for conciliation, but if neither party did so within 60 days, the trial court would consider the order permanent and final. Accordingly, we conclude that the trial court's order was final. **See Parker v. MacDonald**, 496 A.2d 1244, 1247 (Pa. Super. 1985) (a custody order that contemplates future proceedings at the initiation of one of the parties is a final appealable order). On November 4, 2020, Mother filed a timely notice of appeal and contemporaneous statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii) on November 13, 2020. Mother filed a motion to stay and an application for supersedeas with the trial court, but was denied relief. Following her appeal, on December 21, 2020, Mother filed an application for

On appeal, Mother presents the following issues for our review:

    I.    Whether the trial court erred in transferring jurisdiction of a South Carolina custody [o]rder, despite one parent still residing in South Carolina, South Carolina has not ceded jurisdiction and there is still significant evidence and contacts in South Carolina relevant to modification of the [c]ustody [o]rder[?]

    II.    Whether the trial court erred by *sua sponte* modifying the South Carolina [c]ustody [o]rder [and] transferring [Father's custodial] rights to [Grandparents], without all parties' agreement, the proper basis to do so[, and without considering] the custody factors under 23 Pa.C.S.A. § 5328?

Mother's Brief at 8.

Regarding her first issue on appeal, Mother contends, in sum:

In this matter, Mother avers that South Carolina maintains jurisdiction over the subject children because a court in South Carolina accepted a stipulation between Mother and Father regarding their custodial rights of the subject children and entered it as a final order. This was an initial determination. The South Carolina court still has exclusive and continuing jurisdiction, as the court in that state has not determined that it no longer has jurisdiction, nor has it determined that Pennsylvania would be a more convenient forum. Furthermore, Father has not physically left South Carolina to live elsewhere.

Mother's Brief at 17 (internal citations omitted). Specifically, Mother claims it was error for the trial court to conclude that it, rather than the South Carolina

---

supersedeas with this Court. By *per curiam* order filed on January 8, 2021, this Court granted relief and directed that "the order of November 2, 2020 is hereby stayed pending a final decision by this Court." *Per Curiam* Order, 1/8/2021. Mother and Grandparents have filed counseled appellate briefs with this Court. Father has filed a *pro se* appellate brief on his own behalf.

court, should determine if Pennsylvania was a more convenient forum. *Id.* at 17-18. "Said differently," Mother contends, "the South Carolina court must determine that either it 1) no longer has exclusive, continuing jurisdiction, or 2) that a court of this Commonwealth would be more convenient."[3] *Id.* at 19. Mother also claims that Father still resides in South Carolina because the state is home to his only residential address and he has no present plans to relocate outside the state. *Id.* at 20-21. Referencing experts in the South Carolina custody matter, "Mother claims there is still significant evidence related to both Father and [Grandparents] in the state of South Carolina." *Id.* at 20-21. Furthermore, Mother argues that the trial court erred by finding Father could waive South Carolina's jurisdiction. *Id.* at 21. Ultimately, "Mother is [asking] this Court to confirm that the state of South Carolina still [retains] jurisdiction [over] the custody matter related to the children [] and that all Pennsylvania orders [] be vacated." Mother's Brief at 23.

Our standard of review is well-settled:

A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

---

[3] Grandparents concede that the court in "South Carolina has not determined that it no longer has exclusive, continuing jurisdiction[.]" Grandparents' Brief at 6. They also concede that the trial court could not determine the question of forum *non conveniens*. *Id.*

*T.A.M. v. S.L.M.*, 104 A.3d 30, 32 (Pa. Super. 2014).

"The [UCCJEA] was promulgated by the National Conference of Commissioners on Uniform State Laws in 1997 and became effective in Pennsylvania in 2004." *Rennie v. Rosenthol*, 995 A.2d 1217, 1220 (Pa. Super. 2010). "The UCCJEA replaced the Uniform Child Custody Jurisdiction Act ("UCCJA") as a way to rectify inconsistent case law and revise custody jurisdiction in light of federal enactments." *Id.* "The purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." *A.L.-S. v. B.S.*, 117 A.3d 352, 356 (Pa. Super. 2015).

> Relevant herein, we have determined:
>
> [T]he issue of interstate jurisdiction to modify a custody determination is governed by [23 Pa.C.S.A. §] 5423, which provides the following.
>
> Except as otherwise provided in [23 Pa.C.S.A. §] 5424 (relating to temporary emergency jurisdiction), **a court of this Commonwealth may not modify a child custody determination made by a court of another state unless a court of this Commonwealth has jurisdiction to make an initial determination** under [23 Pa.C.S.A. §] 5421(a)(1) or (2)[4] (relating to initial child custody jurisdiction) **and**:

---

[4] A court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

> (1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the

(1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under [S]ection 5422 (relating to exclusive, continuing jurisdiction) or that a court of this Commonwealth would be a more convenient forum under [23 Pa.C.S.A. §] 5427 (relating to inconvenient forum); or

(2) **a court of this Commonwealth** or a court of the other state **determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state**.

23 Pa.C.S.A. § 5423.

\*                \*                \*

The comment to [23 Pa.C.S.A. §] 5423 makes clear,

[t]he modification state is not authorized to determine that the original decree state has lost its jurisdiction. The only exception is when the child, the child's parents, and any person acting as a parent do not presently reside in the

_____

proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

(i)      the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

(ii)     substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships[.]

23 Pa.C.S.A. § 5421(a).

other state. In other words, **a court of the modification state can determine that all parties have moved away from the original state**.

23 Pa.C.S.A. § 5423 (Comment).

This important exception to [S]ection 5423 is consistent with the UCCJEA's effort to prioritize a child's home state as being the preferred basis for jurisdiction. The UCCJEA defines "home state" as:

> The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa.C.S.A. § 5402.

*T.A.M.*, 104 A.3d at 33-34 (Pa. Super. 2014) (internal citations, quotations, original emphasis, and inserted footnote omitted).

Moreover, we have stated:

> One of the main purposes of the UCCJEA was to clarify the exclusive, continuing jurisdiction for the state that entered the child custody decree.
>
> *       *       *
>
> Under the plain meaning of [S]ection 5422(a)(1), a court that makes an initial custody determination retains exclusive, continuing jurisdiction until neither the child nor the child and one parent or a person acting as a parent have a significant connection with the original decree state and substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in the original decree state.
>
> The Uniform Law Comment to [S]ection 5422 provides further guidance[.]  It states that "the continuing jurisdiction of the original decree state is exclusive, and it continues until one of two events occurs:

- 8 -

* * *

2. Continuing jurisdiction is lost when the child, the child's parents, and **any person acting as a parent no longer resides in the original decree state**. The exact language of subsection (a)(2) was the subject of considerable debate. Ultimately[, it was] settled [] that "a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent **do not presently reside in this state**" to determine when the exclusive, continuing jurisdiction of a state ended.... It is the intention of this Act that subsection (a)(2) of this section means that the named **persons no longer continue to actually live within the state**. Thus, unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the state to live elsewhere, the exclusive, continuing jurisdiction ceases. If the child, the parents, and all persons acting as parents **have all left the state** which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in state B, as well as a court in state A, can decide that state A has lost exclusive, continuing jurisdiction.

23 Pa.C.S.A. § 5422, Uniform Law Comment.

**A.L.-S.**, 117 A.3d at 359–60 (internal citations, original brackets, and original emphasis omitted; emphasis added).

When determining residence under the UCCJEA, where one parent is in the military, this Court's decision in **Wagner v. Wagner**, 887 A.2d 282 (Pa. Super. 2005) is controlling. In that case:

Mother and Father were divorced by the Mercer County Court of Common Pleas. On March 11, 2002, following the parties' divorce, Mother obtained primary physical custody of the parties' two minor children. Mother and Father [] shared legal custody of the minor children. After the divorce, Mother, a member of the United States Army Reserve, resided in Greensburg, Pennsylvania, with her children. Mother [was] domiciled in the state of Florida, and she retain[ed] a mailing address, drivers' license, and voter registration in that state. In November, 2004, Mother moved from

- 9 -

Greensburg, to her new duty station in Fort Dix, New Jersey, and she moved the children to the state of Florida to stay with her stepmother. The United States Army assigned Mother to Fort Dix to undergo training for an impending duty assignment in Iraq.

Father, a resident of Warren, Ohio, commenced [an] action on November 19, 2004, in the Mercer County Court of Common Pleas by filing an emergency petition that sought the return of the children from the state of Florida to Pennsylvania and an award of temporary primary physical custody of the children during Mother's deployment overseas.

\* \* \*

The classic legal definition of the term "residence" in this Commonwealth is "living in a particular place, requiring only physical presence." *See Norman v. Pennsylvania Nat'l. Ins. Co.*, 684 A.2d 189, 191 (Pa. Super. 1996) (citation omitted). The term "domicile," with which the term "residence" is often confused, is "that place where one has their fixed true, fixed and permanent home and principal establishment, and to which whenever they are absent they have the intention of returning." *Norman*, 684 A.2d at 191 (citation omitted).

Utilizing th[ese] definition[s], none of the parties resided in Pennsylvania at the time the petition was filed or thereafter. At the time the Father's petition was filed, Father was a resident of Warren, Ohio (where he currently resides), and Mother was a resident of Fort Dix, New Jersey (Mother resides currently in Iraq at her duty station). The children resided in the state of Florida at the time Father filed his emergency petition.

\* \* \*

Mother, although a resident of Pennsylvania during her period of military service in this Commonwealth, was born and raised in Florida. She maintain[ed] her drivers' license, voter registration, and tax registration with the state of Florida, and she intends to live in the state of Florida with the children upon her return from Iraq. Accordingly, despite her previous **residency** in this Commonwealth, Mother is **domiciled** in the state of Florida. *See Norman*, 684 A.2d at 191.

*Wagner v. Wagner*, 887 A.2d 282, 283–289 (Pa. Super. 2005) (original brackets omitted; emphasis added; original footnote incorporated).

In the instant matter, the trial court determined that Father currently maintains an apartment in South Carolina and lives there while on active military duty, but his legal residence is Texas. *See* Trial Court Opinion, 11/12//2020, at 6. Father has a Texas driver's license, filed state taxes previously in Texas, and can maintain legal residency there as an active duty service member. *Id.* at 7. Father has not paid taxes in South Carolina. *Id.* The trial court ultimately compared Father's living situation to "an out of state college student." *Id.* at 7. Father claimed that while he is currently stationed in South Carolina, he did not expect to continue his military duty there, and that he anticipated a "permanent change of station" shortly thereafter. *Id.* Accordingly, the trial court concluded that Father no longer resides in South Carolina for jurisdictional purposes.

We disagree with the trial court's determination. Initially, we note there is no dispute that the South Carolina court did not relinquish jurisdiction pursuant to Section 5423. Hence, Pennsylvania could only accept jurisdiction, as the modification state, upon a determination that all of the parties had moved away from South Carolina, the original state. Applying *Wagner* to the case *sub judice*, Father's residence is in South Carolina simply because he lives there. Father maintains a driver's license and has paid taxes in Texas. Thus, Texas is Father's principal establishment and domicile. However, even if Father intends to return to Texas, Father presently lives and resides in South

Carolina, the state of the original custody determination, and he clearly did not move away. Accordingly, the trial court erred as a matter of law by concluding that Father no longer resides in South Carolina and that Pennsylvania had jurisdiction to modify the original custody agreement between Mother and Father.

Furthermore, we reject the trial court's legal conclusion that Father could relinquish or waive South Carolina's jurisdiction or that he could agree to allow a Pennsylvania court to assume jurisdiction over Grandparents' request for custody modification. "As this Court has explained, however, a party cannot confer subject matter jurisdiction *via* consent." *V.C. v. L.P*., 179 A.3d 95, 99 n.6 (Pa. Super. 2018) (citation omitted) (dismissing a mother's complaint for custody modification filed in Pennsylvania for lack of subject matter jurisdiction, despite father and children living in Pennsylvania, because New York indisputably retained jurisdiction over the original custody action and mother was still a resident of New York). In *V.C.*, after determining Pennsylvania lacked jurisdiction to modify the New York custody agreement, we "remand[ed] with instructions for the trial court to vacate all of its orders in [that] case." *Id.* at 100. Accordingly, we find the trial court erred as matter of law by determining that Father could consent to jurisdiction in

Pennsylvania,[5] we reverse the trial court's decision and remand with instructions to vacate all of its orders in this matter.

Based upon all the foregoing, we conclude that the trial court erred as a matter of law in finding Pennsylvania had jurisdiction over Grandparents' complaint for custody which sought to modify the original, South Carolina custody agreement. South Carolina has not relinquished its exclusive jurisdiction over the original custody agreement. Moreover, Father continues to actually live within the state of South Carolina. Furthermore, Father could not consent to Pennsylvania's jurisdiction. Accordingly, we conclude that the trial court erred as a matter of law in exercising jurisdiction over Grandparents' complaint and we are constrained to vacate the trial court's order entered on November 2, 2020.[6] Because Pennsylvania lacked jurisdiction, we remand

---

[5] We further note that the jurisdictional issue herein is made even more complicated because Father attempted to consent to Pennsylvania's jurisdiction so that Grandparents, as third parties to the initial custody agreement, could request modification of that agreement. Because Father cannot consent to subject matter jurisdiction in Pennsylvania in his own right, he cannot consent to subject matter jurisdiction on behalf of Grandparents, so as to allow them to file for modification of the original custody agreement.

[6] In her second issue presented on appeal, Mother argues that the trial court erred in *sua sponte* transferring Father's custodial rights to Grandparents pursuant to 51 Pa.C.S.A. § 4109. Mother's Brief at 22-23. Having determined that the trial court lacked jurisdiction to entertain Grandparents' custody claims, we agree that transferring Father's custodial rights was erroneous. Moreover, Section 4109 provides that a court may "enter a temporary order to temporarily assign custody rights to family members of the servicemember" when the "eligible servicemember has received notice of **deployment**[.]" 51 Pa.C.S.A. § 4109(a.1.)(a) (emphasis added). Here, there is no dispute that the military has not deployed Father as statutorily required under Section

- 13 -

with instructions for the trial court to vacate all of its orders in the present case. We further direct the trial court to cooperate fully with the court in South Carolina in its exercise of jurisdiction over the parties' child custody dispute.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2021

---

4109. **See** Mother's Brief at 23 ("Father stated that he was active duty, not deployed."); **see also** Father's *Pro Se* Brief at 8 ("Unfortunately, Section 4109 requires that a parent be deployed. I was **not** deployed") (emphasis in original). Hence, Mother appears to be entitled to relief based upon her second claim.